# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**JAMES L. SANDERS**                                                    **CIVIL ACTION**

**VERSUS**                                                                        **NO. 13-6122**

**RAYBURN CORRECTIONAL CENTER, ET AL.**                **SECTION "A"(3)**

## REPORT AND RECOMMENDATION

Plaintiff, James L. Sanders, a state inmate, filed this civil action pursuant to 42 U.S.C. §

1983. In pertinent part, that statue provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action at law, suit in
> equity, or other proper proceeding for redress ....

42 U.S.C. § 1983.

In the original complaint, plaintiff named the Rayburn Correctional Center as the sole

defendant;[1] however, the Court notified him that the prison was not a proper defendant and ordered

him to file an amended complaint.[2] He then filed an amended complaint adding Warden Robert

Tanner and Dr. Casey McVea as defendants.[3]

---

[1]   Rec. Doc. 1.

[2]   Rec. Doc. 4.

[3]   Rec. Doc. 5. In the amended complaint, plaintiff refers to "Casey Macvea"; however, the
medical records reflect that the defendant's name is actually "Casey McVea."

## I.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact."  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those

2

claims whose factual contentions are clearly baseless." <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Macias v. Raul A. (Unknown), Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>In re</u> <u>Katrina Canal Breaches</u> <u>Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

The United States Supreme Court has explained:

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint, as amended,[4] the undersigned recommends that, for the following reasons, plaintiff's federal civil rights claims be dismissed as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

---

[4]    The court must liberally construe a *pro se* civil rights complaint. <u>See</u> <u>Moore v. McDonald</u>, 30 F.3d 616, 620 (5th Cir. 1994).

## II.  Plaintiff's Claims

### A.  Rayburn Correctional Center

As noted, plaintiff named the Rayburn Correctional Center as a defendant in this federal civil rights lawsuit.  However, that is clearly improper.  A prison may not be sued because it is merely a building, not a "person" subject to suit under 42 U.S.C. § 1983.  Hodge v. B.B. Sixty Rayburn Correctional Center, Civ. Action No. 08-3193, 2008 WL 4628586, at *3 (E.D. La. Oct. 16, 2008); Thomas v. Rayburn Correctional, Civ. Action No. 07-9203, 2008 WL 417759, at *2 (E.D. La. Feb. 13, 2008); Carlisle v. Rayburn Correctional Center, Civ. Action No. 07-451, 2007 WL 550054, at *2 (E.D. La. Feb. 16, 2007).

### B.  Warden Robert Tanner and Dr. Casey McVea

Plaintiff does not specify in his amended complaint whether defendants Tanner and McVea are being sued in their official capacities, their individual capacities, or both.

To the extent that plaintiff may be seeking monetary damages against Tanner and McVea in their official capacities, those claims must be dismissed.  The defendants are state employees working at the B.B. "Sixty" Rayburn Correctional Center, a prison operated by the Louisiana Department of Public Safety and Corrections.  See, e.g., Demouchet v. Rayburn Correctional Center, Civ. Action No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008). State employees sued in their official capacities for monetary damages simply are not considered "persons" subject to suit under 42 U.S.C. § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989); Stotter v. University of Texas, 508 F.3d 812, 821 (5th Cir. 2007); American Civil Liberties Union v. Blanco, 523 F. Supp. 2d 476, 479 (E.D. La. 2007); Tyson v. Reed, Civ. Action No. 09-7619, 2010

4

WL 360362, at *4 (E.D. La. Jan. 21, 2010); Searls v. Louisiana, Civ. Action No. 08-4050, 2009 WL

653043, at *6 (E.D. La. Jan. 21, 2009); Demouchet, 2008 WL 2018294, at *3.  Additionally, because

a claim against a state employee in his official capacity for monetary damages is actually a claim

against the state itself, such claims are barred by the Eleventh Amendment.  Williams v. Thomas,

169 Fed. App'x 285, 286 (5th Cir. 2006); Tyson, 2010 WL 360362, at *4; Searls, 2009 WL 653043,

at *6; Demouchet, 2008 WL 2018294, at *3.

　　　　Of course, the foregoing does not apply to the extent that plaintiff is asserting claims against

Tanner and McVea in their individual capacities or in any capacity for injunctive or declaratory

relief.[5]  However, if plaintiff is asserting any such claims, they are likewise subject to immediate

dismissal for the following reasons.

　　　　In this lawsuit, plaintiff alleges that he has a tumor in "the upper groin area of [his] right leg."

He claims that the jail medical department "failed to recognize, inform, or medicate this tumor" and

also failed to provide treatment even after the tumor was diagnosed at an outside medical

appointment.  He states that, as a result, he has suffered from "constant blood clotting," loss of

circulation, and has had to use a wheelchair or a cane.  In addition to the foregoing claim, plaintiff

also alleges that he has not been provided adequate treatment for back pain.[6]

---

　　[5]　A state employee sued in his official capacity is considered a "person" with respect to a §
1983 claim for relief which is declaratory or injunctive in nature and prospective in effect.  Stotter,
508 F.3d at 821; American Civil Liberties Union, 523 F. Supp. 2d at 479.  Further, the Eleventh
Amendment does not bar such a claim.  Aguilar v. Texas Department of Criminal Justice, 160 F.3d
1052, 1054 (5th Cir. 1998).

　　[6]　The undersigned notes that, in the original complaint, plaintiff also mentions in passing:
"[A] few years ago I had a minor heart attack caused by the extreme heat.  Again, RCC did nothing
to help me out."  It is unclear whether plaintiff also intended to seek relief based on that allegation,

In order to conduct the screening mandated by federal law, the undersigned obtained and reviewed certified copies of plaintiff's medical records.[7]  Those records include the following notations concerning his "tumor" and back pain:

- On March 7, 2012, plaintiff was seen during a sick call complaining of back pain. He was prescribed Motrin and referred to the doctor.

- On August 17, 2012, plaintiff was seen during a sick call complaining of back pain. He was referred to the doctor.

- On August 28, 2012, Dr. McVea examined plaintiff who was complaining of ear and back pain.  He was prescribed Parafon Forte and Tylenol for pain.

- On September 30, 2012, plaintiff was seen during a sick call complaining of dental pain and a knot in his groin.  Her was referred to the dentist and to the doctor.

---

in that it is not mentioned in the amended complaint.  In any event, plaintiff does not allege that either Tanner or McVea had any personal involvement concerning that incident; therefore, no claim has been stated against them with respect to that incident.  See Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) ("Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation.  This standard requires more than conclusional assertions:  The plaintiff must allege specific facts giving rise to the constitutional claims." (citation omitted)); Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").  Further, as noted, plaintiff contends that the purported heart attack occurred "a few years ago."  The limitations period for asserting a § 1983 claim is one year. Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998) ("[F]or a § 1983 action, the court looks to the forum state's personal-injury limitations period.  In Louisiana, that period is one year." (citation omitted)).  Accordingly, it appears that any claim concerning that event would have prescribed long before this lawsuit was filed.

[7]     Those records have been filed into this federal record.  Rec. Doc. 7.  Plaintiff was provided with a copy of the records for his review and use in this proceeding.

- On October 9, 2012, plaintiff was examined by Dr. McVea for various medical problems, including a hernia.

- On October 26, 2012, plaintiff was seen during a sick call complaining that he had a hernia which was getting larger and burning.  He was examined by the nurse who determined that no treatment was needed at that time.

- On November 26, 2012, plaintiff was given an ultrasound which revealed:  "There is a single enlarged right groin lymph node measuring 2.6 x 1.9 x 2.9 cm.  The lymph node has lost its reniform shape and is diffusely hypoechoic without differentiation of the cortex and the sinus.  There is a loss of sinus fat.  The capsule has lumpy bumpy appearance without appears breech of the capsule.  No surrounding fluid collection identified.  There is no internal necrosis.  Doppler evaluation demonstrates asymmetric flow more towards the pole.  There is no other significant finding."

- On December 12, 2012, Dr. McVea reviewed plaintiff's chart and ordered that he be referred to "Interventional radiology" for a biopsy of the abnormal lymph node.  The referral was requested that same day.

- On December 17, 2012, plaintiff was seen during a sick call for the mass in his groin.  His chart was sent to Dr. McVea, who noted that a biopsy had already been requested.

- On March 11, 2013, Dr. McVea saw plaintiff concerning the mass in his groin.  Dr. McVea ordered various medications and instructed staff to follow-up concerning the referral for a biopsy.

7

- On April 15, 2013, Dr. McVea again saw plaintiff concerning the mass in his groin. Dr. McVea ordered that the request for a referral to an outside provider be changed to "urgent."

- On April 16, 2013, the prison medical staff submitted a follow-up email request for an outside appointment for a needle-guided biopsy of plaintiff's lymph node.

- On June 28, 2013, plaintiff submitted a sick call request complaining of back pain; however, the medical records reflect that he was uncooperative during an examination to determine any limitations on his range of motion. He was prescribed ibuprofen and exercise and was told to submit another sick call request if his condition did not improve.

- On July 5, 2013, plaintiff submitted a sick call request complaining of back pain. An examination was performed and no injury, bruising, or swelling was noted; however, his chart was sent to the prison doctor for evaluation.

- On July 9 and 11, 2013, plaintiff submitted sick call requests complaining that he was experiencing back pain and that his "tumor" had grown. He was referred to the prison doctor.

- On July 17, 2013, plaintiff was examined by Dr. McVea, who prescribed ibuprofen and ordered an x-ray of plaintiff's spine.

- On July 22, 2013, an x-ray plaintiff's spine taken. That x-ray revealed: "There is mild dextroscoliosis. The vertebral bodies are of normal height and configuration.

8

There are disc space narrowing at L3-4 and L4-5, to lesser extent L2-3.  There are marginal osteophytes."

- On August 14, 2013, plaintiff was seen by Dr. McVea, who noted that the x-ray indicated degenerative disc disease and that plaintiff's lymph node was still enlarged. Dr. McVea ordered an x-ray of plaintiff's left foot and an MRI of his spine.  On that same date, an ultrasound of the mass in plaintiff's groin revealed:  "-3.5 cm trans x 2.8 cm sag x 1.8 cm AP, solid, heterogenous, hypoechoic nodule in the right groin. Blood flow was demonstrated by color doppler.  It appears to be an enlarged lymph node."

- On August 30, 2013, plaintiff was seen at the Interim LSU Hospital regarding the enlarged lymph node.  It was noted that plaintiff should return for excision because there was a concern that the growth might be malignant.

- On September 18, 2013, plaintiff was seen by Dr. McVea, and it was noted that he was awaiting an appointment to have the enlarged lymph node excised.

- On October 1, 2013, plaintiff was seen for a sick call requesting ibuprofen for lower back pain.  Plaintiff's chart was sent to the doctor for an appointment scheduled for October 30.

- On October 11, 2013, plaintiff was seen at the Interim LSU Hospital for the enlarged lymph node and surgery was scheduled for November 25, 2013.

9

- On October 14, 2013, plaintiff was seen for a sick call visit requesting more medication and an order for bed rest. Plaintiff's medications were reordered and his chart was sent to the doctor for review.

- On October 30, 2013, plaintiff was seen by Dr. McVea complaining of worsening lower back pain and lower extremity weakness. Dr. McVea ordered that plaintiff be allowed to rest in his bunk as needed for two months, noted that plaintiff was awaiting an MRI, and also noted that plaintiff refused Ultram, a pain reliever, because he stated that he was unwilling to stand in the pill call line.[8]

Although plaintiff is claiming that his medical care is inadequate under federal law, it is important to note that a prisoner's constitutional right to medical care is extremely limited. Under the Eighth Amendment, a prisoner's right to medical care is violated *only* if his "serious medical needs" have been met with "deliberate indifference" on the part of penal authorities. See, e.g., Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). For the purposes of this Report and Recommendation, the undersigned will assume that plaintiff's enlarged lymph node and back pain qualify as serious medical needs.[9]

_____

[8] Plaintiff's medical records were provided to this Court on November 21, 2013. Therefore, information concerning his medical care after that date is not included in this federal record.

[9] This assumption may well be overly generous with respect to plaintiff's back pain. It is at least debatable whether such back pain qualifies as a sufficiently serious medical need to trigger constitutional protections. See, e.g., Claudet v. Jones, Civ. Action No. 10-87, 2010 WL 4365512, at *4 (E.D. La. Oct. 27, 2010).

However, as noted, plaintiff must *also* be able to show that his serious medical needs were met with deliberate indifference.  The United States Fifth Circuit Court of Appeals has observed:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind."  McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

It is clear that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."  Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  That is certainly the case here.  Based on plaintiff's medical records, it is beyond cavil that the defendants did not refuse to treat him, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct evincing a wanton disregard for his medical condition.  Rather, on the contrary, they even arranged for him to receive repeated evaluations and treatment by outside specialists in addition to the care he was receiving from the prison medical staff.

That, of course, is not to say that plaintiff's care was optimal or that all of his concerns were resolved to his satisfaction.  However, that simply was not required.  The fact that an inmate's medical treatment "may not have been the best money could buy" is insufficient to establish a

11

federal violation. <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992); <u>see also</u> <u>Gobert v. Caldwell</u>, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); <u>McMahon v. Beard</u>, 583 F.2d 172, 174 (5th Cir. 1978). Therefore, if an inmate in fact received medical treatment, federal constitutional protections were not violated just because that treatment was unsuccessful or because pain persisted despite the treatment. <u>Gobert</u>, 463 F.3d at 346; <u>Williams v. Chief of Medical Operations, Tarrant County Jail</u>, No. 94-10115, 1994 WL 733493, at *2 (5th Cir. Dec. 27, 1994); <u>Kron v. Tanner</u>, Civ. Action No. 10-518, 2010 WL 3199854, at *7 (E.D. La. May 19, 2010), <u>adopted</u>, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). Moreover, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice. <u>Hall v. Thomas</u>, 190 F.3d 693, 697-98 (5th Cir. 1999); <u>see also</u> <u>Kelly v. Gusman</u>, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); <u>Cerna v. Texas Tech Medical Staff</u>, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).

The fact that plaintiff apparently believes that more could have been done for him is of no moment. Absent exceptional circumstances, a prisoner's disagreement with his medical treatment simply does not constitute deliberate indifference. <u>Gobert</u>, 463 F.3d at 346. For example, "the question of whether ... additional ... forms of treatment is indicated is a classic example of a matter for medical judgment." <u>Estelle</u>, 429 U.S. at 107. Generally, such matters of professional medical judgment are better left to the expertise of physicians rather than to the legal expertise of judges. Federal courts are therefore loath to second-guess such medical decisions in federal civil rights actions. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are

generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."); Castro v. Louisiana, Civ. Action No. 08-4248, 2008 WL 5169401, at *4 (E.D. La. Dec. 8, 2008) ("[M]edical judgments are not to be lightly second-guessed in a federal civil rights action.").  There is no basis whatsoever to engage in such second-guessing here.

In summary, the determinative issue before the Court is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problem persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with *deliberate indifference*.  As noted, it is clear that there was no deliberate indifference in this case.

Lastly, the undersigned notes that, in his amended complaint, plaintiff states "I'd like to pursue charges for medical malpractice."[10]  However, claims of negligence or malpractice present issues of *state* law for *state* courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).  Because all of plaintiff's claims under federal law should be dismissed, the Court should decline to consider any state law claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction ...."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When

---

[10]   Rec. Doc. 5, p. 2.

a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims."). If plaintiff wishes to pursue claims under state law, he should do so in the state courts.

<u>**RECOMMENDATION**</u>

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim on which relief may be granted, and/or for seeking monetary damages against a defendant who is immune from such relief.

It is **FURTHER RECOMMENDED** that plaintiff's state law claims, if any, be **DISMISSED WITHOUT PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twentieth day of May, 2014.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]   <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.